UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Kathy Ann Wilt

   v.                                     Civil No. 15-cv-439-LM
                                        Opinion No. 2016 DNH 182
Carolyn W. Colvin, Acting
Commissioner, Social
Security Administration

**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Kathy Wilt moves to reverse the Acting Commissioner's decision to deny her applications for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income, or SSI, under Title XVI, 42 U.S.C. § 1382.  The Acting Commissioner, in turn, moves for an order affirming her decision.  For the reasons that follow, this matter is remanded to the Acting Commissioner for further proceedings consistent with this order.

### I. Standard of Review

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without

> remanding the cause for a rehearing.  The findings of
> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB decisions); see also 42 U.S.C. § 1383(c)(3) (establishing § 405(g) as the standard of review for SSI decisions).  However, the court "must uphold a denial of social security . . . benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'"  Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts."  Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the [Acting Commissioner] to determine issues of credibility and to

draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Acting Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations omitted).  Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam).  Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[ ] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II. Background

The parties have submitted a Joint Statement of Material Facts.  That statement, document no. 12, is part of the court's record and will be summarized here, rather than repeated in full.

Wilt has been diagnosed with various physical and mental impairments.  She applied for both DIB and SSI in October of 2012.

In April of 2013, Wilt's physical residual functional capacity ("RFC")[1] was assessed by Dr. Burton Nault, a non-examining physician who reviewed her medical records. Based upon his review, Dr. Nault identified no exertional or non-exertional limitations on Wilt's ability to perform work-related activities.

In February of 2013, the SSA referred Wilt to Dr. Evelyn Harriott, a psychologist, for a consultative examination. Based upon her examination, Dr. Harriott prepared a Mental Health Evaluation Report on Wilt. In her report, Dr. Harriott gave Wilt diagnoses of panic disorder without agoraphobia and major depressive disorder, moderate. Dr. Harriott also offered the following opinions on Wilt's then current level of functioning:

> [Ms. Wilt] was cooperative and appears able to interact appropriately with others. . . .
>
> . . . Ms. Wilt is able to understand and remember basic and familiar locations, information and procedures. . . .
>
> . . . Ms. Wilt is able to attend, concentrate and persist at a below average pace to complete rote and brief tasks. . . .
>
> . . . Ms. Wilt is able to make simple decisions. She also appears able to interact appropriately, at least for brief periods, as she did in the office today. However, she is not motivated to interact with people

---

[1] "Residual functional capacity" is a term of art that means "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1).

> and doesn't care about grooming herself when going out
> in pubic to run errands.  It is unlikely that she
> would keep attendance and a schedule, as she is not
> motivated to do so and complains of constant stomach
> upset.

Administrative Transcript (hereinafter "Tr.") 341-42.

In February of 2013, Wilt's mental RFC was assessed by Dr. John Warren, a non-examining psychologist who reviewed her medical records.  Dr. Warren indicated that Wilt had limitations in all four areas he reported on: (1) understanding and memory; (2) sustained concentration and persistence; (3) social interaction; and (4) adaptation.  He summarized his opinions on Wilt's mental RFC this way:

> Claimant [is] able to understand/remember simple
> instructions.  Unable to do so for moderately to
> highly complex/detailed instructions.
>
> Claimant is able to sustain the mental demands
> associated with carrying out simple tasks over the
> course of [a] routine workday/workweek within
> acceptable attention, persistence, [and] pace
> tolerances.  Unable to do so for moderately to highly
> complex/detailed tasks requiring sustained
> concentration.
>
> Claimant is able to sustain the basic demands
> associated with relating adequately with
> supervisors/co-workers.  Unable to interact
> appropriately with the general public.[2]

---

[2] He supported his conclusions concerning Wilt's capacity for social interaction with findings that Wilt had moderate limitations in her abilities to: (1) accept instructions and respond appropriately to criticism from supervisors; (2) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (3) maintain socially appropriate behavior and adhere to basic standards of neatness

>Claimant is able to adapt to routine workplace change, remain aware of environmental hazards, form basic plans/goals, [and] travel independently.

Tr. 49-50, 61-62.

After the SSA denied Wilt's applications for benefits, she received a hearing before an Administrative Law Judge ("ALJ"). Subsequently, the ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

>3. The claimant has the following severe impairments: anxiety and depression (20 CFR 404.1520(c) and 416.920(c)).
>
>. . . .
>
>4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
>. . . .
>
>5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can remember and perform simple tasks; interact superficially with coworkers and supervisors, and have rare contact with the general public; and maintain a schedule and acceptable attendance.
>
>. . . .

---

and cleanliness, and with a finding that she had marked limitations in her ability to interact appropriately with the general public.

>    6.  The clamant has no past relevant work (20 CFR
>    404.1565 and 416.965).
>
>    . . . .
>
>    10.  Considering the claimant's age, education, work
>    experience, and residual functional capacity, there
>    are jobs that exist in significant numbers in the
>    national economy that the claimant can perform (20 CFR
>    404.1569, 404.1569(a), 416.969, and 416.969(a)).

Tr. 12, 14, 16, 19, 20.  Without relying upon the testimony of a vocational expert ("VE"), and without providing any evidence or explanation, the ALJ concluded that Wilt's nonexertional limitations, including her limitation to superficial interactions with coworkers and supervisors, had "little or no effect on the occupational base of unskilled work at all exertional levels."  Tr. 20.

### III. Discussion

#### A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  To be eligible for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets.  42 U.S.C. § 1382(a).  The question in this case is whether Wilt was under a disability from August 31,

7

2010, through August 5, 2014, which is the date of the ALJ's decision.

To decide whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ is required to employ a five-step process. See 20 C.F.R. §§ 404.1520 (DIB) & 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

The claimant bears the burden of proving that she is disabled. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987). She must do so by a preponderance of the evidence. See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)). However,

> [o]nce the [claimant] has met his or her burden at Step 4 to show that he or she is unable to do past work due to the significant limitation, the Commissioner then has the burden at Step 5 of coming

> forward with evidence of specific jobs in the national economy that the [claimant] can still perform. Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982).  If the [claimant's] limitations are exclusively exertional, then the Commissioner can meet her burden through the use of a chart contained in the Social Security regulations.  20 C.F.R. § 416.969; Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2, tables 1-3 (2001), cited in 20 C.F.R. § 416.969; Heckler v. Campbell, 461 U.S. 458 (1983).  "The Grid," as it is known, consists of a matrix of the [claimant's] exertional capacity, age, education, and work experience.  If the facts of the [claimant's] situation fit within the Grid's categories, the Grid "directs a conclusion as to whether the individual is or is not disabled."  20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00(a), cited in 20 C.F.R. § 416.969.  However, if the claimant has nonexertional limitations (such as mental, sensory, or skin impairments, or environmental restrictions such as an inability to tolerate dust, id. § 200(e)) that restrict his [or her] ability to perform jobs he [or she] would otherwise be capable of performing, then the Grid is only a "framework to guide [the] decision," 20 C.F.R. § 416.969a(d) (2001).  See also Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (discussing use of Grid when applicant has nonexertional limitations).

Seavey, 276 F.3d at 5 (parallel citations omitted).

### B. Wilt's Claims

Wilt claims that the ALJ made several errors in assessing her RFC and also erred at Step 5 in two ways, by relying upon a faulty RFC and by failing to obtain the testimony of a vocational expert.  Even if the ALJ properly determined Wilt's RFC, the RFC she ascribed to Wilt required her to take testimony from a VE.  Her failure to do so necessitates a remand.

In a recent decision, Magistrate Judge Rich characterized the law of this circuit regarding when an ALJ may determine that a claimant is not disabled, at Step 5, without the benefit of testimony from a VE:

> The Grid generally cannot permissibly be used as a vehicle to meet the commissioner's Step 5 burden – vocational expert testimony ordinarily must be sought instead – if a claimant's nonexertional impairments significantly affect his or her ability "to perform the full range of jobs" at the appropriate exertional level. Ortiz v. Secretary of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (citation and internal quotation marks omitted).  "[A]though a nonexertional impairment can have a negligible effect, ordinarily the ALJ must back such a finding of negligible effect with the evidence to substantiate it, unless the matter is self-evident." Seavey v. Barnhart, 276 F.3d 1, 7 (1st Cir. 2001) (citation and internal quotation marks omitted).

Parker v. Colvin, No. 1:15-cv-00446-JHR, 2016 WL 4994997, at *6 (D. Me. Sept. 19, 2016).  Moreover, as Judge Barbadoro has recently noted, "[t]he First Circuit has cautioned that 'an ALJ typically should err on the side of taking vocational evidence when a [non-exertional] limitation is present in order to avoid needless agency rehearings.'"  Brindley v. Colvin, No. 14-cv-548-PB, 2016 WL 355477, at *5 (D.N.H. Jan. 29, 2016) (quoting Oritz, 890 F.2d at 528) (remanding where ALJ neither called vocational expert nor explained why reliance upon the Grid was appropriate, but "merely stated, without explanation or citation to record evidence, that [the claimant's] non-exertional

10

limitations have little or no effect on the occupational base of unskilled light work") (internal quotation marks and citation to the record omitted).

Here, the ALJ included three non-exertional limitations in Wilt's RFC: (1) an ability to remember and perform only simple tasks; (2) an ability to interact only superficially with coworkers and supervisors; and (3) a capacity for only rare contact with the general public.  Based upon Seavey, and the ALJ's failure to explain or support her determination that Wilt's nonexertional limitations "have little or no effect on the occupational base of unskilled work at all exertional levels," Tr. 20, the ALJ was free to resolve Wilt's claim at Step 5 without evidence from a vocational expert only if it is self-evident that the three limitations she identified would have a negligible effect upon a claimant's ability to perform the full range of unskilled jobs.  The problem lies with the limitation the ALJ found with respect to Wilt's ability to interact with coworkers and supervisors.[3]

---

[3] It is well established that "limitations to simple work and simple instructions and [to] work not involving interaction with the public . . . [do] not . . . preclude reliance on the Grid, at least in cases in which . . . a claimant has been found capable of performing work at all exertional levels." Gurney v. Astrue, Civ. No. 09-153-B-W, 2010 WL 323912, at *2 (D. Me. Jan. 20, 2010) (citations omitted).

With regard to the mental abilities necessary to perform unskilled work, guidance from the SSA provides:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; <u>to respond appropriately to supervision, coworkers</u>, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *4 (S.S.A. 1985) (emphasis added).

In Parker, the court ruled that the ALJ's failure to acknowledge evidence that the claimant "had limitations bearing on her ability to respond appropriately to supervision and/or coworkers . . . undermined his reliance on the Grid" because "it is not self-evident that [those limitations] would have had only a negligible effect on the [claimant's] ability to perform the full range of work at all exertional levels." 2016 WL 4994997, at *7 (citing Gurney v. Astrue, Civ. No. 09-153-B-W, 2010 WL 323912, at *3 (D. Me. Jan. 20, 2010)). The decision in Gurney, on which Judge Rich relied in Parker, is both on point and persuasive. In Gurney, when assessing the claimant's RFC, the ALJ identified six limitations, including a limitation to occasional interaction with co-workers and supervisors. See 2010 WL 323912, at *1. Notwithstanding the limitations he

12

identified, the ALJ determined, without relying upon the testimony of a VE, that the claimant was not disabled, at Step 5.  In the district court, the claimant argued that the testimony of a VE was required due to three limitations in her RFC, including a limitation to occasional interaction with co-workers.  Id. at *3.  The magistrate judge deemed it unnecessary to consider all three of the claimant's limitations, and recommended a remand, because

> the commissioner . . . failed to make a persuasive case that one of those limitations, the restriction to only occasional interaction with supervisors and co-workers, has no more than a negligible effect on a claimant's ability to perform the full range of unskilled jobs.

Id.

Here, the Acting Commissioner has failed to make a persuasive case that a limitation to superficial interaction with supervisors and coworkers has only a negligible effect on a person's ability to perform the full range of unskilled jobs.  As a preliminary matter, the court notes one difference between the limitation in Gurney and the limitation in this case.  In Gurney the claimant was limited to "only occasional interaction with supervisors and co-workers."  2010 WL 323912, at *3 (emphasis added).  In this case, the ALJ found that Wilt was limited to superficial interaction with coworkers and

13

supervisors. See Tr. 16. That difference, however, cuts in Wilt's favor:

> [T]he restriction to only superficial contact with co-workers is a significant non-exertional limitation that makes reliance on the Grids inappropriate here. It is difficult to see how such a limitation — as opposed to, say, only occasional contact with one's coworkers — would not have a significant impact on plaintiff's ability to perform a full range of sedentary work. See SSR 85-15, 1985 WL 56857 at *4 (noting "[a] substantial loss of ability" to respond appropriately to co-workers "would severely limit the potential occupational base").

Lewis v. Astrue, No. 3:11-cv-05482-RJB-KLS, 2012 WL 1022219, at *10 (W.D. Wash. Mar. 5, 2012), R & R adopted by 2012 WL 1022202 (Mar. 26, 2012). So too here; it is difficult to see how a limitation to superficial interaction with coworkers and supervisors would not have a significant impact on Wilt's ability to perform a full range of unskilled work.

In response to Wilt's claim that the ALJ was obligated to obtain VE testimony, the Acting Commissioner acknowledges Gurney, but then frames the following counterargument:

> [O]nly significant limitation in supervisory interaction erodes the potential job base. SSR 85-15, 1985 WL 56857, at *4. This Court has held that a similar limitation in the RFC, "to avoid overly critical supervision," did not substantially erode the occupational base. Beaton v. Astrue, Civ. No. 10-cv-343-JD, 2011 DNH 046, 2011 WL 1051060, at *7; see Garcia-Martinez v. Barnhart, 111 F. App'x 22, 23, 2004 WL 2240136 (1st Cir. Oct. 1, 2004).

14

Doc. No. 11-1, at 15.  The Acting Commissioner's reliance upon Beaton and Garcia-Martinez is misplaced.

In Beaton, the ALJ found that the claimant was limited to employment without "overly critical supervision," and the ALJ ruled against him at Step 5, without taking testimony from a VE.  2011 WL 1051060, at *7.  After calling it a close question, Judge DiClerico determined that "the ALJ's determination was . . . minimally sufficient."  Id. (citations omitted).  However, while the limitation in Beaton referred to supervision and the one in this case refers to supervisors, those two limitations are materially distinguishable.  The limitation in Beaton described something the claimant could not tolerate, i.e., overly critical supervision.  The limitation in this case describes something the claimant cannot do, i.e., interact with either supervisors or coworkers in anything other than a superficial way.  Because of the differences between the limitation in Beaton and the limitation in this case, including the fact that Wilt's limitation pertains to both supervisors and coworkers, Judge DiClerico's decision in Beaton has no particular bearing on the question before this court.

As for Garcia-Martinez, it is sufficient to note that while the Acting Commissioner cites that case for the proposition that "a limitation for no more than occasional interaction with co-

15

workers and supervisors and rare interaction with the general public does not preclude an ALJ from relying on the Grids," doc. no. 11-1, at 15-16, the opinion in that case says no such thing. In Garcia-Martinez, the claimant was limited to work that "(1) was of a routine, repetitive nature, (2) did not involve undue pressure, and (3) did not involve interactions with the public." 111 F. App'x at 23. Because Garcia-Martinez involved no limitation on the claimant's ability to interact with either supervisors or coworkers, the opinion in that case is inapposite, and offers no useful guidance for the resolution of this case.

Given the foregoing discussion of Beaton and Garcia-Martinez, the court concludes that the Acting Commissioner "has failed to make a persuasive case that . . . the restriction to only [superficial] interaction with supervisors and co-workers . . . has no more than a negligible effect on [Wilt's] ability to perform the full range of unskilled jobs." Gurney, 2010 WL 323912, at *3.

Parker, Gurney, and Lewis all counsel in favor of remand. "To be sure, several courts have drawn the opposite conclusion under similar facts." Boley v. Astrue, No. 11-10896, 2012 WL 680393, at *13 (E.D. Mich. Feb. 10, 2012) (citations omitted), R & R adopted by 2012 WL 680392 (Mar. 1, 2012). But as Magistrate

Judge Grand points out in Boley, in most of those cases, "the courts supported their decisions only with the regulation's language [i.e., language in SSR 85-15] that unskilled work generally deals with objects rather than people." This court concurs with Judge Grand's appraisal of those decisions as unpersuasive because "[n]one [of them] addressed the specific proposition that a limited ability to respond to supervisors and/or co-workers 'would severely limit the potential occupational base.'" Id. (quoting SSR 85-15, 1985 WL 56857, at *4; citing 20 C.F.R. § 404.1545). Moreover, as Judge Grand also points out, even though unskilled jobs typically require those performing them to work primarily with objects rather than people, those jobs still require the ability to respond appropriately to supervision and coworkers. See Boley, 2012 WL 680393, at *11. In other words, there is a difference between what a person works with, i.e., things or people, and the context in which he or she works, i.e., under minimal rather than ubiquitous supervision, or in a solitary rather than a populous workplace. In short, the holdings of Parker, Gurney, Lewis, and Boley (along with numerous other decisions cited therein, see 2012 WL 680393, at *12) convince this court that the specific limitations in Wilt's RFC required the ALJ to call

17

upon a vocational expert at Step 5, and that her failure to do so necessitates a remand.

## IV. Conclusion

For the reasons given, the Acting Commissioner's motion for an order affirming her decision, document no. 11, is denied, and Wilt's motion to reverse that decision, document no. 9, is granted to the extent that this matter is remanded to the Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).  The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

October 14, 2016

cc:   Penelope E. Gronbeck, Esq.
      Terry L. Ollila, Esq.